SO ORDERED: October 22, 2015.

Basil H. Lorch III
United States Bankruptcy Judge

## ORDER SUSTAINING IN PART CREDITOR'S OBJECTION TO CONFIRMATION

This matter comes before the Court on the Objection to Confirmation of Amended Plan (Doc. 24) filed on August 7, 2015 by creditor Springleaf Financial Services of Indiana, Inc. ("Springleaf").  Springleaf objects to the proposed treatment of their secured claim on the 2002 Dodge Caravan belonging to debtors Donald B. and Janet L. Dekorte (the "Debtors").  The Court held a hearing on Springleaf's objection on August 25, 2015 during which the matter was taken under advisement.  After considering the issue further, the Court ordered Springleaf and the Debtors to each submit an affidavit regarding the origin and nature of the "Prior Account with Lender" referred to in loan agreement attached to Springleaf's proof of claim.  The Debtors filed an Affidavit (Doc. 32) on September 9, Springleaf filed an Affidavit (Doc. 34) on September 11, and the Debtors then filed an Amended Affidavit (Doc. 34) on September 24, 2015.  After considering the foregoing, the Court finds that Springleaf's Objection to Confirmation should be **SUSTAINED** in part in accordance herewith.

### Background

Springleaf holds a secured claim for money loaned with a principal balance in the amount of $11,448.71 (the "Current Loan").  Springleaf's claim represents amounts financed in the purchase of the Debtors' 2002 Dodge Caravan (the "Dodge"), which serves as the underlying

1

collateral. The Debtors' plan proposes to treat Springleaf's claim under section 506, asserting that the Dodge has a value of $1,650. Under the plan, Springleaf's claim would be bifurcated into a secured claim for the value of the collateral, or $1,650, and a general unsecured claim for the remaining $9,798.71. Springleaf objects to this "cramdown" on the ground that it has a purchase-money security interest (a "PMSI") in the Dodge, which is a motor vehicle that the Debtors purchased for personal use within 910 days of bankruptcy. Springleaf asserts that cramdown is therefore precluded under section 1325 and its claim should be treated as fully secured at $11,448.71.

The issue is whether all or part of Springleaf's claim is precluded from cramdown under the "hanging paragraph" of section 1325(a) as debt secured by a PMSI in a motor vehicle which the Debtors acquired within the 910-day period preceding the petition date, given that $5,631.38 of the Current Loan went to finance an "Amount Paid on Prior Account with Lender." The Seventh Circuit has ruled that a portion of financing that goes to pay off negative equity in a debtor's trade-in vehicle can be part of a PMSI, and "if thus secured is not subject to the cramdown power of the bankruptcy judge in a Chapter 13 bankruptcy." *In re Howard*, 597 F.3d 852, 858 (7th Cir. 2010).

Whether the Debtors' "Prior Account with Lender" represented the negative equity from a vehicle which the Debtors traded in on the Dodge would, therefore, be potentially determinative in this case. The Court, having determined that more facts were needed, ordered Springleaf and the Debtors to each submit an affidavit regarding the origin and nature of the "Prior Account with Lender" (the "Prior Loan") referred to in the attachment to Springleaf's proof of claim. According to the Debtors' Amended Affidavit:

> "The [Prior Loan] . . . refers to a loan that we had with Springleaf that was paid off from the funds received from this loan. The [Prior Loan] was secured by a 2002 Ford Taurus [that] we already owned at the time that the loan was taken out. None of the funds from the [Prior Loan] were used to purchase that vehicle. The 2002 Ford Taurus which was collateral for the [Prior Loan] was subsequently junked and was not in our possession at the time that the current loan was taken out."

**Discussion**

A chapter 13 debtor has the ability to "cramdown" on a secured creditor, effectively reducing the principal balance of a secured debt to the value of the underlying collateral. Pursuant to section 1325(a)(5)(B), a bankruptcy court can confirm a chapter 13 plan over the objection of a secured creditor if the secured creditor will receive payments that are equivalent to the market value of their collateral. The remainder of the secured creditor's debt is then treated as a general unsecured claim under section 506(a). The "hanging paragraph" of section 1325(a), however, precludes a debtor from cramming down on a debt secured by a PMSI in a motor vehicle which the debtor purchased for personal use within 910 days of bankruptcy.

Since the addition of the hanging paragraph of 1325(a), courts have been forced to consider what is included in a PMSI where a lender extends financing for more than just the purchase price of a vehicle. Because the Bankruptcy Code does not define PMSI, the starting point for this analysis is the U.C.C. The U.C.C. defines a "purchase-money obligation," which gives rise to a PMSI,[1] as "an obligation . . . incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in . . . the collateral." I.C. § 26-1-9.1-103(a)(2). Official Comment 3 to the U.C.C. states that a PMSI includes "obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations."

As previously noted, the Seventh Circuit has joined the majority of circuit courts in holding that a portion of a loan that is used to pay off negative equity in a debtor's trade-in vehicle can be part of a PMSI in the new vehicle. *Howard*, 597 F.3d at 858. As part of the PMSI, the negative equity portion of such a loan is therefore protected from cramdown if the debtor purchased the

---

[1] The U.C.C. states that a security interest is a "purchase-money security interest" to the extent that it is secured by "purchase-money collateral," which, in turn, "means goods or software that secures a *purchase-money obligation* incurred with respect to that collateral." I.C. § 26-1-9.1-103(a)-(b).

3

vehicle within 910 days of their bankruptcy filing. In *Howard*, the Seventh Circuit noted the prevalence of negative equity financing and the fact that "wrapping negative equity into the [PMSI] is often necessary to enable the purchase of the car" in concluding that it is an "obligation assumed by the buyer of the car in connection with his acquiring ownership," and, thus, included in the PMSI. *Id.* at 857. However, the Seventh Circuit also distinguished the case of wrapping negative equity from a trade-in vehicle into a PMSI from a scenario in which an auto lender pays off an unrelated unsecured debt at the time of the purchase. *See id.* at 856. If, for example, a lender paid off a purchaser's unsecured credit card debt, "the additional debt would not be part of the [PMSI] and so would be subject to the cramdown power of the bankruptcy court." *Id.* at 856.

In this case, the Prior Loan paid off by Springleaf at the time of the purchase of the Dodge is more akin to the Seventh Circuit's credit card example than it is to paying off negative equity from a trade-in vehicle. While the attachment to Springleaf's Affidavit shows that the Prior Loan was originally secured by a 2002 Ford Taurus, the Debtors' Affidavit and Amended Affidavit establish that the Prior Loan was a personal loan rather than purchase-money for the Ford. The Debtors already owned the Ford at the time and simply pledged it as collateral for the Prior Loan. Thus, the Court finds that the Prior Loan was not a deficiency balance or negative equity from money loaned to purchase the Ford. The Debtors' Amended Affidavit also states that the Ford was no longer in the Debtors' possession when the Current Loan was taken out as it was subsequently junked after being pledged as collateral for the Prior Loan. The Court therefore finds that the Prior Loan was an antecedent debt which was unsecured at the time that the Current Loan was issued.

Funds advanced to pay off an antecedent unsecured debt at time of the purchase of a vehicle do not fit within the definition of a purchase-money obligation and are therefore not included in the PMSI. *In re Vega*, 344 B.R. 616, 623 (Bankr. D. Kan. 2006) (excluding from a PMSI the portion of a car loan used to pay off a previous car loan where the purchaser did not trade in the old vehicle and the previous loan was an unsecured debt). Here, the portion of the

4

Current Loan used to pay off the Prior Loan was not "all or part of the price" of the Dodge nor was it "value given to enable the Debtors to acquire rights in" the Dodge. The Prior Loan was also clearly not in the nature of or in any way similar to the types of expenses cited in Comment 3. The Prior Loan was an antecedent unsecured debt which was unrelated to the purchase transaction of the Dodge – Springleaf simply extinguished the unsecured Prior Loan, rolled it into the Current Loan, and thereby resecured it. As this Court emphasized in the context of negative equity prior to *Howard*, including an antecedent debt in the formula for PMSI "essentially transforms one creditor's unsecured claim into a secured claim at the expense of the debtor's general unsecured creditors." *In re White*, 417 B.R. 102, 106 (Bankr. S.D. Ind. 2009). That concern looms even larger in this case where the Prior Loan was completely unrelated to the purchase transaction. As such, the Court concludes that the $5,631.38 portion of the Current Loan used to pay off the Prior Loan is not included in Springleaf's PMSI in the Debtors' Dodge.

## Conclusion

Based upon the foregoing, the Court finds that Springleaf has a PMSI in the Dodge in the amount of $5,817.33.[2] Pursuant to the hanging paragraph of section 1325(a), the Debtors cannot cramdown on this PMSI. The portion of the Current Loan which was used to pay off the Debtors' Prior Loan is not similarly protected. Thus, while the Debtors may bifurcate Springleaf's claim, they cannot provide for a secured claim of less than the $5,817.33 PMSI. Accordingly, Springleaf's Objection to Confirmation of Amended Plan (Doc. 24) is **SUSTAINED** to the extent that the Debtors' plan provides Springleaf with an inadequate secured claim. The Debtors are hereby ordered to prepare an amended plan which proposes to either treat the $5,817.33 PMSI as a secured claim or surrender the Dodge.

---

[2] According to Springleaf's proof of claim, the balance of the Current Loan as of the petition date was $11,448.71. After subtracting from that figure the $5,631.38 used to pay off the Prior Loan, the purchase-money obligation at the time filing was $5,817.33, which is the amount of Springleaf's PMSI in the Dodge. This is also the difference between the amount of Springleaf's secured claim under nonbankruptcy law and the portion of such debt which went toward the Prior Loan.